# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JEFF C. SLUKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV948 ACL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision denying the application of Jeff C. Sluka for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. [Doc. 13] Defendant filed a Brief in Support of the Answer. [Doc. 20]

## Procedural History

On October 15, 2010, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, claiming that he became unable to work due to his disabling condition on July 31, 2008.[1] (Tr. 122-36.) These claims were denied initially and, following an administrative hearing, Plaintiff's claims were denied in a written opinion by an Administrative

---

[1] Plaintiff subsequently amended his alleged onset of disability date to April 21, 2011. (Tr. 152).

Law Judge (ALJ), dated June 25, 2012.   (Tr. 66-70, 11-27.)   Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on April 2, 2013.   (Tr. 7, 1-6.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

**A.     ALJ Hearing**

Plaintiff's administrative hearing was held on May 8, 2012.   (Tr. 33.)   Plaintiff was present and represented by counsel.   Also present was vocational expert Brenda Young.

The ALJ examined Plaintiff, who testified that he was fifty years of age and had an eleventh grade education and never obtained a GED.   (Tr. 34.)

Plaintiff testified that his prior work included working at:   Schnucks as a stocker from 1995 to 1997; Hoss as a baker and on the production line from 1998 to 2002 (Tr. 35.); Sunset Memorial from 2003 to 2004 as a grounds keeper and grave digger; a company where he assembled cubicles from 2005 to 2006 (Tr. 35-36).   The cubicle assembler job sometimes required Plaintiff to lift "a couple hundred pounds."   (Tr. 36.)   Plaintiff was laid off from that position (Tr. 37) and he received unemployment benefits after being laid off (Tr. 38).   Plaintiff did not work anywhere else after receiving unemployment benefits.   Id.

At the time of the hearing, Plaintiff was five-feet, eight-inches tall and weighed 200 pounds.   Id.   He had problems with alcohol fifteen years prior to the hearing, but stated that he last consumed alcohol (one drink) several months prior to the hearing.   (Tr. 39.)   Plaintiff also had a history of using marijuana, uppers, downers, cocaine and heroin use fifteen years prior to the hearing.   Id.

Plaintiff testified that he experiences depression and anxiety.   (Tr. 40.)   Plaintiff lives in the basement of his parents' home and does not leave his house.   Id.   He experiences paranoia and low energy, and has no friends.   Id.

Plaintiff testified that he also has hepatitis C.[2]   (Tr. 41.)   At the time of the hearing, Plaintiff had not received treatment for the hepatitis C, but was in the process of seeking treatment. Id.

Plaintiff testified that he was wearing an Ace bandage on his right hand at the hearing, because he broke his hand more than ten years prior to the hearing, and his hand still bothered him. Plaintiff explained that he is unable to pick up items with his right hand "like [he] used to."   (Tr. 42.)

Plaintiff testified that he has high cholesterol, but does not take medication for this condition.   Id.   Plaintiff stated that he takes his medications as prescribed, but does not really know the purpose of each medication.   Id.

Plaintiff testified that he sees Dr. Surendra Chaganti every month for depression and stress. Id.   Plaintiff stated that some of the medications Dr. Chaganti prescribes help his conditions.   Id.

When questioned by his attorney, Plaintiff testified that he went to the emergency room for chest pains a few months prior to the hearing, and was told that the pain was caused by stress.   (Tr. 43.)

Plaintiff testified that he takes Seroquel,[3] which helps him sleep, but causes swelling in his

---

[2]Inflammation of the liver due to viral infection.   About 75 percent of hepatitis C infections give rise to chronic persistent infection.   A high percentage of these develop chronic liver disease leading to cirrhosis and possible hepatocellular carcinoma.   See Stedman's Medical Dictionary, 877 (28th Ed. 2006).

[3]Seroquel is an anti-psychotic drug indicated for the treatment of bipolar disorder and schizophrenia.   See WebMD, http://www.webmd.com/drugs (last visited September 10, 2014).

hands and feet for a couple of months.   Id.   Plaintiff stated that he has not yet told his doctor

about the swelling.   (Tr. 43-44.)

Plaintiff testified that he had been wearing the Ace bandage on his hand for "a couple

weeks" and that he only wore it when his hand started to bother him.   (Tr. 44)

Plaintiff testified that he experiences back pain due to a car accident he was involved in ten

years prior to the hearing.   Id.   Plaintiff stated that he was unable to mow the yard due to his hand

and back pain.   Id.

Plaintiff testified that he gets "the shakes" periodically, including when he was working.

(Tr. 45)

Plaintiff testified that he did not receive medical treatment prior to 2011, because he started

receiving Medicaid in 2011 and was unable to afford treatment prior to this time.   (Tr. 46.)

Plaintiff stated that he receives treatment at South County Health Center.   Id.   Plaintiff

testified that he was prescribed pain medication for his back, hand, wrist, and ankles.   Id.

Plaintiff stated that the pain medication did not provide much relief.   Id.   Plaintiff testified that he

has tried using a heating pad for his pain, but it was ineffective.   Id.

Plaintiff testified that he cries "all the time."   (Tr. 47)   Plaintiff stated that he does not get

along well with people.   Id.   Plaintiff testified that he was harassed by the police when he was

taking a walk, which caused him to break down and cry.   (Tr. 48.)

Plaintiff stated that he has been involved in verbal and physical altercations with

co-workers or bosses in the past.   Id.   Plaintiff testified that he was terminated from his last

position because he was unable to perform the job.   (Tr. 49)   Plaintiff stated that he had been

working at the position for four years but he would frequently forget how to do the job.   Id.

Plaintiff testified that his supervisor criticized him and called him names due to his inability to

4

perform the job.   <u>Id.</u>

Plaintiff testified that he often forgets things people tell him (Tr. 50); he has difficulty paying attention to television programs; and he does not want to leave his house because he is paranoid of being around people, especially police and fears he will be put in jail (Tr. 51).

Plaintiff testified that he goes days without taking a shower, because he lacks the energy to bathe and his mother reminds him to bathe.   (Tr. 52.)   He only leaves the house to go to medical appointments.   <u>Id.</u>   Plaintiff stated that his mother also asks him to do household chores, but he does not do much around the house.   <u>Id.</u>

Plaintiff testified that he has numbness and tingling in his heels and ankles, which has been occurring since he was working.   (Tr. 53)   Plaintiff testified that he is able to stand for about thirty minutes to one hour before he has to sit down.   <u>Id.</u>

Plaintiff stated that he is able to sit for thirty minutes to one hour.   (Tr. 54.)   He stated that walking does not bother him as much as standing still.   <u>Id.</u>   Plaintiff stated that he is able to lift a gallon of milk and he occasionally drops things.   (Tr. 55.)

Plaintiff stated that he has had suicidal thoughts.   <u>Id.</u>   He stays in the basement all day and sleeps on the couch in the basement.   <u>Id.</u>   There is a television in the basement, but Plaintiff does not watch much television.   (Tr. 55-56.)   Plaintiff stated that he gets upset when he thinks about his life and he yells and occasionally throws things.   (Tr. 56.)

Plaintiff testified that he became upset when his last supervisor told him he was not performing his job properly.   (Tr. 57.)   Plaintiff stated that he has walked off the job site when he was upset with his supervisor.   <u>Id.</u>

Vocational Expert (VE) Brenda Young testified next and the ALJ asked her to assume a hypothetical claimant with Plaintiff's background and the following limitations: able to lift and

carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours out of eight; sit for six hours out of eight; should not perform work involving direct contact with food products; able to understand, remember, and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and coworkers in a task-oriented setting; casual and infrequent contact with others; should not work in a setting that includes constant or regular contact with the general public; and should not perform work that involves more than infrequent handling of customer complaints. (Tr. 58.) The VE testified that the hypothetical claimant could only perform the packer position at the bakery. (Tr. 59.) The VE stated that the individual could perform other light, unskilled work, such as assembly work (150,000 positions nationally, 15,000 locally); and housekeeping/janitorial work (888,000 positions nationally, 9,500 locally). (Tr. 59-60.)

Plaintiff's attorney asked the VE to assume the hypothetical claimant was limited to no contact with the public, no contact with co-workers, and only occasional contact with supervisors. (Tr. 60.) The VE testified that some casual contact with co-workers is required in all the positions she mentioned, although the janitorial job is more solitary than the others. Id.

Plaintiff's attorney asked the VE to assume a hypothetical claimant who was limited to no public contact, no co-worker contact, and less than occasional contact with supervisors. (Tr. 60-61.) The VE testified that the janitorial job would still be appropriate. (Tr. 61.) The VE stated that the janitorial position requires contact with a supervisor approximately four times a day. Id.

Finally, the VE testified that an individual who would miss two days of work a month or who was off task twenty percent of the time would be unable to perform any jobs. Id.

B.     **Relevant Medical Records**

Plaintiff saw Inna Park, M.D., for a consultative internal medicine examination at the request of the state agency on February 10, 2011.  (Tr. 204-210.)   Plaintiff complained of hepatitis C, which resulted in decreased energy, back pain, and hand problems.   (Tr. 204-05.) Upon examination, Plaintiff was cooperative, alert, and "physically comfortable."   (Tr. 205.) Dr. Park's general notes about Plaintiff, included that:   he had good knowledge of his medical issues and good hygiene; he was obese; his affect was anxious, with some tremor in his hands; and he had difficulty relaxing for the physical exam.   Id.   Tenderness was noted along the lumbar spine itself and some tenderness was noted in the paraspinal muscles of the upper lumbar and lower thoracic regions.   (Tr. 206.)   Plaintiff's range of motion was preserved.   Id. Plaintiff was able to get on and off the exam table independently, sit up from the lying position independently, toe and heel walk without difficulty, squat to the floor and recover independently without complaint, and his gait and station were normal.   Id.   Plaintiff's neurological examination was normal.   Id.   Dr. Park diagnosed Plaintiff with hepatitis C, with no physical manifestations of chronic liver disease; mechanical low back pain; and posttraumatic right wrist and hand, with arthralgias.   (Tr. 206-07.)

Plaintiff saw L. Lynn Mades, Ph.D., for a consultative psychological evaluation at the request of the state agency on February 10, 2011.   (Tr. 213-18.)   Plaintiff complained of depression, memory problems, lack of energy, and paranoia regarding police.   (Tr. 213.) Plaintiff reported a history of losing jobs due to arguing and fighting with people and took special education classes in school for a behavioral disorder.   Id.   Plaintiff initially stated that his last use of alcohol was years prior to the examination, but later admitted that he had consumed 24 ounces of beer just days prior.   (Tr. 214.)   Plaintiff reported that he had used marijuana "a couple of

years" prior to the examination, and had used IV drugs, uppers, downers, and cocaine in the more distant past. Id. Upon examination, Plaintiff's mood was mildly anxious and depressed, and his affect was slightly restricted, tearful at times, and generally appropriate. (Tr. 216.) Plaintiff claimed to hear voices, but his report was "atypical and equivocal, and there was no behavioral evidence of any thought disturbance." Id. Plaintiff's insight and judgment were "slightly limited." Id. Dr. Mades diagnosed Plaintiff with depressive disorder NOS; anxiety disorder NOS; alcohol abuse; polysubstance dependence; personality disorder NOS with antisocial traits, rule out antisocial personality disorder; and a GAF score[4] of 65.[5] (Tr. 217.) Dr. Mades stated that Plaintiff was an unreliable informant regarding substance use, and it is not known to what extent this contributes to his reported mood problems. Id. Dr. Mades stated that there appears to be a long-standing history of antisocial behavior, and Plaintiff tended to blame others and not take responsibility for past actions during the evaluation. Id. Dr. Mades stated that there was evidence of substance abuse, antisocial behavior, and mild to moderate mood impairment by history and presentation. (Tr. 217-18.)

Keith L. Allen, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique on February 23, 2011. (Tr. 221-31.) Dr. Allen expressed the opinion that Plaintiff suffered from mild depression, mild anxiety, and a personality disorder NOS, but did not have a severe mental impairment. (Tr. 331)

---

[4] The Global Assessment of Functioning Scale (GAF) is a psychological assessment tool wherein an examiner is to "[c]onsider psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" which does "not include impairment in functioning due to physical (or environmental) limitations." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th Ed. 1994).
[5] A GAF score of 61 to 70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

Plaintiff presented to South County Health Center on April 21, 2011, with complaints of chronic active hepatitis, headache, swelling in the legs, night sweats, weakness, muscle pain, trouble sleeping, and pain. (Tr. 286.)

Plaintiff returned to South County Health Center on April 28, 2011, for mental health treatment. (Tr. 285.) Plaintiff complained of difficulty sleeping, mood swings, memory loss, auditory hallucinations, and crying spells. Id. Plaintiff stated: "Sometimes I wish the Lord would take me, but I could not commit suicide." Id. Upon examination, Plaintiff's mood was severely depressed, and his affect was congruent with his mood. Id. Plaintiff reported that he was open to receiving mental health services. Id.

Plaintiff presented to South County Health Center on June 7, 2011, for treatment of hepatitis C and back problems. (Tr. 282.) Plaintiff also complained of right wrist pain, bilateral heel pain, and depression. Id. Plaintiff was diagnosed with joint pain, and was advised to use ice and take non-steroidal anti-inflammatory drugs. (Tr. 283.) Plaintiff was referred to psychiatry for treatment of his depression. Id.

Plaintiff saw a social worker at South County Health Center on June 15, 2011, at which time he complained of paranoia and suicidal ideation. (Tr. 281.) Plaintiff's mood was described as moderately depressed on examination, and his affect was congruent with his mood. Id.

Plaintiff presented to South County Health Center on July 8, 2011, with complaints of chest pain and dyspnea. (Tr. 279.) Plaintiff was advised to visit the emergency department for evaluation. Id.

Plaintiff presented to South County Health Center on August 8, 2011, for follow-up, at which time he reported he was still having pain in his back and hand. (Tr. 276.) Plaintiff indicated that he had gone to the emergency room for chest pain, and the work-up was negative.

Id.   Mild tenderness was noted on musculoskeletal examination.   Id.   Plaintiff was diagnosed with joint pain, and was prescribed Tramadol[6] and Naprosyn.[7]   (Tr. 277.)   X-rays of the lumbar spine were also ordered.   Id.

Plaintiff presented to Surendra Chaganti, M.D., on August 9, 2011, for a psychiatric examination.   (Tr. 257-59.)   Plaintiff reported difficulty paying attention and following instructions, mood swings, problems with his temper, and paranoia.   (Tr. 257.)   Upon examination, Plaintiff's mood was anxious, hypo-manic, and depressed; his affect was anxious; he reported auditory hallucinations and paranoid delusions; his energy was decreased; his attention span and concentration were limited; his remote memory was intact; and his recent memory was not intact.   (Tr. 259.)   Dr. Chaganti diagnosed Plaintiff with schizoaffective disorder[8] and a history of alcoholism, with a GAF score of 50.[9]   (Tr. 258.)   Dr. Chaganti prescribed Zyprexa,[10] Prozac,[11] and Xanax.[12]   (Tr. 259.)

Plaintiff saw Dr. Chaganti for follow-up on August 23, 2011, at which time Plaintiff reported paranoia and being "moody."   (Tr. 260.)   Upon examination, Dr. Chaganti noted Plaintiff was paranoid and his recent memory was impaired.   Id.

---

[6] Tramadol is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time.   See Physician's Desk Reference ("PDR"), 2429 (63rd Ed. 2009).

[7] Naprosyn is a non-steroidal anti-inflammatory drug indicated for the treatment of osteoarthritis. See PDR at 2874-75.

[8] An illness manifested by an enduring major depressive, manic, or mixed episode along with delusions, hallucinations, disorganized speech and behavior, and negative symptoms of schizophrenia.   Stedman's at 570.

[9] A GAF score of 41 to 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."   DSM-IV at 32.

[10] Zyprexa is a psychotropic drug indicated for the treatment of schizophrenia and bipolar disorder, and agitation associated with schizophrenia and bipolar I mania.   See PDR at 1884-85.

[11] Prozac is indicated for the treatment of major depressive disorder.   PDR at 1854.

[12] Xanax is indicated for the treatment of anxiety and panic disorders.   See WebMD, http://www.webmd.com/drugs (last visited September 10, 2014).

Plaintiff presented to Dr. Sharma at John C. Murphy Clinic on September 9, 2011. (Tr. 296.) Dr. Sharma noted that Plaintiff had been seen at the clinic for an initial evaluation the month prior, at which time he was started on Zoloft.[13] Id. Plaintiff reported depression, lack of energy, impaired memory, and difficulty concentrating. Id. Upon mental status examination, Plaintiff looked distressed and his insight and judgment were fair. Id. Dr. Sharma diagnosed Plaintiff with major depressive disorder and increased Plaintiff's dosage of Zoloft. Id.

On September 20, 2011, Dr. Chaganti noted Plaintiff was hyperactive, hyper talkative, paranoid, and his attention was poor. (Tr. 261.) Dr. Chaganti increased Plaintiff's Xanax and Prozac. Id.

Plaintiff presented to South County Health Center on October 5, 2011, at which time he reported back, wrist, and knee pain. (Tr. 273.) Upon examination, Plaintiff's gait was normal and a small amount of swelling was noted in both arms. Id. Plaintiff was prescribed Tramadol and was referred to orthopedics for his joint pain. Id.

Plaintiff saw Dr. Chaganti on October 18, 2011, at which time Plaintiff reported multiple family problems. (Tr. 262.) Plaintiff felt anxious and depressed, and his sleep was poor. Plaintiff reported experiencing visual hallucinations with Prozac. Id. Upon examination, Plaintiff was depressed, anxious, and paranoid. Id. Dr. Chaganti continued Plaintiff's Xanax and Zyprexa, discontinued the Prozac, and prescribed Wellbutrin[14] and Seroquel. Id. On November 15, 2011, Plaintiff reported problems with memory loss. (Tr. 263.) Upon examination, Plaintiff's affect was flat, his attention and concentration were "distractible." Id. Dr. Chaganti increased Plaintiff's dosage of Seroquel. Id. On December 13, 2011, Plaintiff

---

[13] Zoloft is indicated for the treatment of depression. See WebMD, http://www.webmd.com/drugs (last visited September 10, 2014).
[14] Wellbutrin is indicated for the treatment of major depressive disorder. See PDR at 1649.

reported feeling moody, anxious, and paranoid.   (Tr. 264.)   On examination, Plaintiff's affect was anxious, he was paranoid, his attention was fair, and he was distractible.   Id.   Dr. Chaganti increased Plaintiff's dosages of medication.   Id.

Plaintiff saw Dr. Sharma on December 16, 2011, for follow-up, at which time he reported he felt depressed and he had stopped taking his Zoloft one month prior because it was not working. (Tr. 295.)   Plaintiff reported that he had never been on psychotropic medications in the past.   Id. Upon examination, Plaintiff was talkative and cooperative, his affect was anxious and distressed, and his insight and judgment were fair.   Id.   Dr. Sharma restarted Plaintiff on Zoloft.   Id.

Plaintiff saw Dr. Chaganti on January 10, 2012, at which time Plaintiff reported feeling depressed and having low energy.   (Tr. 265.)   Plaintiff's affect was anxious, his mood was "not good," his attention was fair, and he was distractible.   Id.   Dr. Chaganti adjusted Plaintiff's medications.   Id.

Plaintiff saw Dr. Sharma on January 13, 2012, at which time he reported feeling depressed. (Tr. 294.)   Dr. Sharma increased Plaintiff's dosage of Zoloft.   Id.

Plaintiff presented to South County Health Center for follow-up on February 6, 2012.   (Tr. 271-72.)   Plaintiff complained of heartburn, depression, and joint pain.   (Tr. 271.)   Plaintiff reported that his medications were not working.   Id.   Plaintiff was advised to discuss an increase in his medication with his psychiatrist.   (Tr. 272.)

Plaintiff saw Dr. Chaganti on February 7, 2012, and March 6, 2012.   (Tr. 266-67.) Plaintiff continued to report symptoms of moodiness, anxiety, paranoia, difficulty sleeping, difficulty concentrating, and impaired memory.   Id.   Dr. Chaganti adjusted Plaintiff's medications.   Id.

On March 30, 2012, Plaintiff returned to Dr. Sharma for follow-up.   (Tr. 293.)   Plaintiff

reported that he had stopped taking the Zoloft one month prior as it was not working.   Id.
Plaintiff complained of moodiness and anger.   Id.   Dr. Sharma prescribed Celexa.[15]   Id.

Plaintiff presented to Dr. Chaganti on April 3, 2012, at which time he reported feeling moody, anxious, and paranoid; and hearing voices.   (Tr. 268.)   Upon examination, Plaintiff was anxious and paranoid, and his concentration and recent memory were decreased.   Id.

### Evidence Submitted to the Appeals Council

Dr. Chaganti completed a Mental Residual Functional Capacity Questionnaire on August 21, 2012.   (Tr. 297-301.)   Dr. Chaganti indicated that Plaintiff's diagnosis was schizoaffective disorder mixed, with a current GAF score of 50.   (Tr. 297.)   Plaintiff's medications were Seroquel, Luvox,[16] and Xanax.   Id.   The clinical findings noted by Dr. Chaganti included increased psychomotor activity, flight of ideas, paranoia, and anxiety.   Id.   Dr. Chaganti identified the following signs and symptoms: appetite disturbance with weight change, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, paranoid thinking, recurrent obsessions of compulsions which are a source of marked distress, persistent irrational fear of a specific object or activity which results in a compelling desire to avoid the object or activity, perceptual or thinking disturbances, motor tension, pressures of speech, easy distractibility, and oddities of thought, perception, speech or behavior.   (Tr. 298.)   Dr. Chaganti expressed the opinion that Plaintiff was seriously limited but not precluded in the following mental abilities:   maintain attention for two-hour segments, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an

[15] Celexa is an antidepressant drug indicated for the treatment of depression.   See PDR at 1161.
[16] Luvox is an antidepressant drug indicated for the treatment of social anxiety disorder.   See PDR at 1760.

unreasonable number and length of rest episodes, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, understand and remember detailed instructions, and carry out detailed instructions. (Tr. 299-300.) As support for these findings, Dr. Chaganti noted that Plaintiff is paranoid, has decreased concentration, is distractible, and has impaired recent memory. Id. Dr. Chaganti anticipated that Plaintiff would be absent from work due to his impairments three days a month. (Tr. 301.) Finally, Dr. Chaganti indicated that the earliest date the above limitations applied was "2011." Id.

## The ALJ's Determination

The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since April 21, 2011, the amended alleged onset date of disability (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: hepatitis C; obesity; major depressive disorder, alternately diagnosed as depressive disorder not elsewhere classified ("NEC") or not otherwise specified ("NOS"); anxiety disorder NOS; schizoaffective disorder; and personality disorder NOS with anti-social traits (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting at least six hours out of eight; and standing/walking at least six hours out of eight) as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: he

cannot perform work involving direct contact with food products; can understand, remember, and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent; should not work in a setting which includes constant or regular contact with the general public and should not perform work which includes more than infrequent handling of customer complaints.

6.      The claimant is capable of performing past relevant work as a packer (DOT #920.587-018).   This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from April 21, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-27.)

The ALJ's final decision reads as follows:

Based on the application for a period of disability and disability insurance benefits protectively filed on September 24, 2010, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on September 24, 2010, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 27.)

## Discussion

**A.      Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency.   See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).   The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it.   See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000).   Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.   See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).   If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld.   See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).   The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision.   See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)(citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)).   "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary."   Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998).   The analysis required has been described as a "searching inquiry."   Id.

## B.   Determination of Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 416 (I)(1)(a); U.S.C. § 423 (d)(1)(a).   The claimant has the burden of proving that s/he has a disabling impairment.   See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.   See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).   First, it is determined whether the claimant is currently engaged in "substantial gainful employment."   If the claimant is, disability benefits must be denied.   See 20 C.F.R. §§ 404.1520, 416.920 (b).   Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.   See 20 C.F.R §§ 404.1520 (c),

416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  <u>Id.</u>  Age, education and work experience of a claimant are not considered in making the "severity" determination.  <u>See id.</u>

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  <u>See</u> 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  <u>See id.</u>  If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience.  <u>See</u> 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if s/he is not able to perform any other work.  <u>See id.</u>  Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.  <u>See</u> <u>Beckley v. Apfel</u>, 152 F.3d 1056, 1059 (8th Cir. 1998).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a,

416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   See 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2).   The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work:   activities of daily living, social functioning, concentration, and persistence or pace.   See 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   See id.   Next, the Commissioner must determine the severity of the impairment based on those ratings.   See 20 C.F.R. §§ 404.1520a (c), 416.920a (c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   See id.   If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment.   See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

## C.   **Plaintiff's Claims**

Plaintiff argues that the ALJ erred in weighing the medical evidence.   Plaintiff next argues that the ALJ erred in determining Plaintiff's RFC.   The undersigned will discuss Plaintiff's claims in turn.

The ALJ made the following determination with regard to plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting at least six hours out of eight; and standing/walking at least six hours out of eight) as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: he cannot perform work involving direct contact with food products; can understand, remember, and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent; should not work in a setting which includes constant or regular contact with the general public and should not perform work which includes more than infrequent handling of customer complaints.

(Tr. 19.)

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of her limitations.    Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question.    See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000).    Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional.    See Lauer, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); Casey v. Astrue, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record).    An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record.    See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).

As an initial matter, the undersigned notes that Plaintiff does not directly challenge the ALJ's determination with regard to Plaintiff's physical RFC.    The ALJ found that Plaintiff was

capable of performing a range of light work.    (Tr. 19.)    The record supports this finding, and

Plaintiff has failed to introduce any evidence or argument supporting the presence of greater

physical limitations.

Plaintiff first argues that the ALJ erred in weighing the medical opinion evidence when

determining Plaintiff's mental RFC.    Specifically, Plaintiff contends that the ALJ gave little

weight to the opinion of the non-examining state agency psychologist, but did not indicate the

evidence upon which he was relying.    Plaintiff also argues that reversal is required because the

ALJ did not have the opportunity to address Dr. Chaganti's findings, as they were submitted

after the ALJ's decision.

The ALJ has the role of resolving conflicts among the opinions of various treating and

examining physicians.    <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1219 (8th Cir. 2001).    The ALJ

may reject the conclusions of any medical expert, whether hired by the government or the

claimant, if they are inconsistent with the record as a whole.    <u>Id.</u>    "A treating physician's

opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a

claimant's] case record.'"    <u>Tilley v. Astrue</u>, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20

C.F.R. § 404.1527(d)(2)).    However, "[w]hen a treating physician's opinions are inconsistent or

contrary to the medical evidence as a whole, they are entitled to less weight."    <u>Halverson v.

Astrue</u>, 600 F.3d 922, 929-30 (8th Cir. 2010) (internal quotation marks omitted).    The opinion

of a consulting physician, who examines a claimant once, or not at all, generally receives very

little weight.    <u>Singh</u>, 222 F.3d at 452.    The opinion of an examining physician is generally

entitled to more weight than the opinion of a non-examining physician.    20 C.F.R.

§ 404.1527(d)(1).    Under the regulations, the ALJ "will always give good reasons . . . for the

weight [he or she] give[s] [a claimant's] treating source opinion."    20 C.F.R. § 404.1527(c)(2).

In determining Plaintiff's mental RFC, the ALJ discussed the findings of consultative psychologist Dr. Mades.    (Tr. 21.)    Plaintiff saw Dr. Mades for a one-time consultative psychological evaluation on February 10, 2011.    (Tr. 213-18.)    The ALJ noted that, although Plaintiff reported auditory hallucinations, Dr. Mades found Plaintiff's report was atypical and equivocal, and that he exhibited no behavioral evidence of hallucinations or other thought disturbance.    (Tr. 21, 216.)    The ALJ pointed out that Dr. Mades assessed a GAF score of 65, which is indicative of mild symptoms and limitations.    (Tr. 21, 217.)

The ALJ next stated that treatment notes of Drs. Chaganti and Sharma indicate that Plaintiff has had normal speech, eye contact, and psychomotor activity; fair attention; no delusions or suicidal/homicidal ideation; appropriate and cooperative behavior; and few complaints of difficulty interacting with others.    (Tr. 21.)    The ALJ acknowledged that Dr. Chaganti assessed a GAF score of 50 on August 9, 2011, but stated that this GAF score was given at the beginning of Plaintiff's treatment prior to being prescribed any medications.    (Tr. 21, 258.)    The ALJ stated that Plaintiff subsequently demonstrated some improvement with medications.    (Tr. 21.)

With regard to the opinion evidence, the ALJ stated that he assigned "little weight" to the opinion of Dr. Keith Allen, the state agency psychologist.    Dr. Allen expressed the opinion in February of 2011 that Plaintiff's mental impairments were non-severe.    The ALJ properly noted that Dr. Allen's opinion was rendered prior to the amended alleged onset date of disability, and does not consider the subsequently received psychiatric treatment notes.

Dr. Chaganti completed a Mental Residual Functional Capacity Questionnaire on August 21, 2012, subsequent to the ALJ's decision.    (Tr. 297-301.)    Plaintiff submitted this evidence to

the Appeals Council.   (Tr. 4.)   Dr. Chaganti expressed the opinion that Plaintiff was seriously limited but not precluded in the following mental abilities: maintain attention for two-hour segments, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest episodes, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, understand and remember detailed instructions, and carry out detailed instructions.   (Tr. 299-300.)   Dr. Chaganti also anticipated that Plaintiff would be absent from work due to his impairments three days a month.   (Tr. 301.)   Plaintiff contends that Dr. Chaganti's opinion is entitled to great weight, yet the ALJ did not have the opportunity to consider this evidence.

        "An application for disability benefits remains in effect only until the issuance of a 'hearing decision' on that application."   Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013) (citing 20 C.F.R. §§ 404.620(a), 416.330).   New evidence submitted to the Appeals Council is considered only to the extent it "relates to the period on or before the date of the [ALJ's] hearing decision."   20 C.F.R. §§ 404.970(b), 416.1470(b).   When that decision is challenged in a § 405(g) action, the Court determines whether it is "supported by substantial evidence on the record as a whole, including the new evidence."   Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007).   "'To be new, evidence must be more than merely cumulative of other evidence in the record.'"   Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012) (quoting Bergmann v. Apfel, 207 F.3d 1065, 1069 (8th Cir. 2000)).

        The undersigned finds that, when Dr. Chaganti's opinion is considered, the ALJ's mental

RFC determination is not supported by substantial evidence on the record as a whole.   Dr. Chaganti's opinion relates to the relevant period, as Dr. Chaganti indicated the limitations assessed applied since 2011.   (Tr. 301.)   Dr. Chaganti provided support for her findings.   Specifically, Dr. Chaganti indicated that Plaintiff had been diagnosed with schizoaffective disorder mixed, with a current GAF score of 50.   (Tr. 297.)   Plaintiff was taking the following medications: Seroquel, Luvox, and Xanax.   The clinical findings noted by Dr. Chaganti included increased psychomotor activity, flight of ideas, paranoia, and anxiety.   Dr. Chaganti identified the following signs and symptoms: appetite disturbance with weight change, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, paranoid thinking, recurrent obsessions of compulsions which are a source of marked distress, persistent irrational fear of a specific object or activity which results in a compelling desire to avoid the object or activity, perceptual or thinking disturbances, motor tension, pressures of speech, easy distractibility, and oddities of thought, perception, speech or behavior.   (Tr. 298.)   Dr. Chaganti further noted that Plaintiff is paranoid, has decreased concentration, is distractible, and has impaired recent memory.

Dr. Chaganti's treatment notes lend support to her findings.   The record reveals that Plaintiff saw Dr. Chaganti approximately monthly for psychiatric treatment for a one-year period beginning in August 2011.   (Tr. 257-68.)   Plaintiff consistently reported complaints of mood swings, low energy, difficulty paying attention, paranoia, and impaired memory.   Upon examination, Dr. Chaganti repeatedly noted anxious mood and affect, decreased attention and concentration, impaired memory, and paranoia.   Dr. Chaganti assessed a GAF score of 50, which is indicative of severe symptoms.   Dr. Chaganti also prescribed multiple psychotropic drugs to treat Plaintiff's symptoms.

The ALJ found that Plaintiff demonstrated some improvement with medications.   (Tr.

21.)    The record, however, does not support this finding.    The treatment notes of Drs. Chaganti and Sharma indicate that Plaintiff continued to experience significant symptomatology, even with medication.    Dr. Chaganti's August 2012 opinion underscores the fact that, despite treatment, Plaintiff had serious limitations resulting from his mental impairments.

### Conclusion

In sum, the mental RFC formulated by the ALJ is not supported by substantial evidence on the record as a whole.    The only opinion evidence available to the ALJ was the opinion of the non-examining state agency psychologist rendered prior to Plaintiff's alleged onset of disability date; and the opinion of the one-time consultative examiner was also rendered prior to Plaintiff's alleged onset of disability date.    Dr. Chaganti was Plaintiff's treating psychiatrist and saw Plaintiff regularly since August 2011.    As such, Dr. Chaganti's August 2012 opinion, which was not completed until a few months after the hearing before the ALJ, was entitled to significant weight, provided it was not inconsistent with the record.    Dr. Chaganti found limitations more severe than those found by the ALJ.

For these reasons, this cause will be reversed and remanded to the ALJ in order for the ALJ to consider the relevant new evidence; formulate a new mental residual functional capacity for plaintiff based on the medical evidence in the record, and further develop the medical record if necessary; and then to continue with the next steps of the sequential evaluation process. Accordingly, a Judgment of Reversal and Remand will be entered separately in favor of Plaintiff in accordance with this Memorandum.

_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of September, 2014.